```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
 2                    EASTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,   )
                                 )
 5        Plaintiff,             )
                                 )
 6        v.                     )No. 4:22-CR-00062 HEA
                                 )
 7   HUSSEIN KADHIM ABOOD        )
     KHALAF,                     )
 8                               )
          Defendant.             )
 9

10                    SENTENCING HEARING

11          BEFORE THE HONORABLE HENRY E. AUTREY
                 UNITED STATES DISTRICT JUDGE
12

13                    APRIL 25, 2023

14

15   APPEARANCES:

16   For Plaintiff:      Colleen C. Lang, Esq.
                         OFFICE OF U.S. ATTORNEY
17                       111 South Tenth Street, 20th Floor
                         St. Louis, MO  63102
18
     For Defendant:      Mohammed Ghulam Ahmed, Esq.
19                       FEDERAL PUBLIC DEFENDER
                         1010 Market Street, Suite 200
20                       St. Louis, MO  63101

21   REPORTED BY:        ANGELA K. DALEY, CSR, RMR, FCRR, CRR
                         Official Court Reporter
22                       United States District Court
                         111 South Tenth Street, Third Floor
23                       St. Louis, MO  63102
                         (314) 244-7978
24

25      PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION
```

1    **(PROCEEDINGS STARTED AT 1:30 P.M.)**

2    **(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH**

3    **THE DEFENDANT PRESENT.)**

4    THE COURT:  Good afternoon, all.  This is the matter

5    of United States of America versus Hussein Kadhim Abood

6    Khalaf, case number 4:22-CR-00062 HEA.  The matter is now

7    before the Court for purposes of sentencing; the defendant

8    having pleaded guilty in this matter on December 1st of 2022

9    to one count, Count One, blackmail.  Sentencing was deferred

10   pending receipt of a presentence investigation report which

11   the Court has now received and reviewed in its entirety.

12   Defendant appears with counsel, Mr. Mohammed Ahmed;

13   the Government appears through Ms. Colleen Lang.

14   Mr. Ahmed, on behalf of the defendant, are you ready

15   to proceed?

16   MR. AHMED:  No, Your Honor.  We would like ruling on

17   the actual motion before we proceed to sentencing if we are

18   going to proceed to sentencing.

19   THE COURT:  Well, we are at the very least ready to

20   proceed on the motion?

21   MR. AHMED:  Yes, Your Honor.

22   THE COURT:  All right.  Are you ready to proceed,

23   Ms. Lang?

24   MS. LANG:  Yes, Your Honor.

25   THE COURT:  All right.  That being stated by

1  Mr. Ahmed, the defendant had filed a motion to withdraw his

2  plea of guilty alleging, in essence I believe, ineffective

3  assistance of counsel.  Is that correct, Mr. Ahmed?

4       MR. AHMED:  Partially, Your Honor.  He filed his own

5  pro se motion just a few days after pleading guilty, and we

6  supplemented the motion with actual elaborated legal premises.

7       THE COURT:  All right.  Well, the defendant's motion,

8  let's proceed with argument in that regard then.

9       MR. AHMED:  Well, thank you, Your Honor.  I think the

10 standard is pretty simple.  It's a fair and just reason to

11 withdraw a plea.  In his own pro se motion, he alleges that he

12 didn't really understand why he was coming to court that day

13 and that from his understanding he was only proceeding because

14 he thought the case would be dropped.  That was in his pro se

15 motion.

16      Afterwards, my office got the case, we have looked at

17 it, and we think there is some substantial legal bases for him

18 not entering a plea.  First, we believe that his counsel at

19 the time made certain representations to him that were flatly

20 incorrect and that had the effect of being affirmative

21 statements of the law that just weren't true regarding

22 basically his deportability.  I think in normal situations

23 where you just leave a defendant with the understanding that

24 there may be consequences, that may be enough, but

25 unfortunately, Mr. Lozano took an extra step and literally

1    said due to my research, I see nothing here that would be

2    deportable, and that was a step too far because it was just

3    bad information.

4         Secondly, we have come to find out that the

5    underlying forensic evidence, the cell phone dump, things of

6    that nature, that was relied upon in reports that we did

7    receive, so I will admit that we did receive reports from the

8    FBI concerning things, but the underlying data was never

9    shared, and without assessing the actual data, we have no

10   basis to assess the credibility of the reports.

11        THE COURT:  When you say underlying data, what are

12   you talking about?

13        MR. AHMED:  I am talking about the phone dump to see

14   if the phone that was taken from Mr. Khalaf is actually the

15   source of the messages that allegedly are attributed to him.

16        THE COURT:  Okay.

17        MR. AHMED:  I think those are substantial reasons for

18   Mr. Khalaf to withdraw his plea even though he would be

19   subjecting himself to much more penalties.  And I have made

20   that clear to him several times, but he feels strongly in that

21   he didn't because of these errors make an actual, knowing, and

22   intelligent plea.

23        For those reasons, Your Honor, we would ask that you

24   grant the motion.  Thank you.

25        THE COURT:  Thank you.  Ms. Lang.

1    MS. LANG:  Thank you, Your Honor.  I will rely on the

2    case law that I have in my written response that was filed

3    yesterday, but I do want to point out that the defendant came

4    into open court, you know, pled guilty freely, voluntarily.

5    We had a lengthy conversation with him.  You asked him

6    numerous questions that this was his right to plead guilty, he

7    did not want a trial.  We went through all of that with him

8    under oath and he agreed that he was satisfied with

9    Mr. Lozano's work on the case and that he did, in fact, want

10   to plead guilty.

11         And then the part about the deportation, that was on

12   the record at an earlier hearing, and Mr. Lozano informed him

13   that he needed to seek an immigration attorney to get that

14   clarified, that there was a chance of deportation, but there

15   was a chance maybe he wouldn't be deported.

16         Again, I don't think that the defendant has met his

17   burden in this case to prove that he was prejudiced by the two

18   issues that he brought forward in his motion to withdraw his

19   guilty plea, and I believe that it should not be withdrawn.

20   Thank you, Your Honor.

21         MR. AHMED:  Your Honor, I don't have much to add

22   other than I think the simple burden of a fair and just reason

23   has been established.

24         THE COURT:  And that fair and just reason is what

25   again?

1    MR. AHMED:  That he was improperly informed of the

2  deportability of his offense, number one, that occurred on the

3  record; and second, that he wasn't able to view the actual

4  underlying evidence to assess whether or not the reports in

5  this case were, in fact, of the device that was attributable

6  to him.

7    THE COURT:  Well, let me ask you this, Counselor.

8  The record of the defendant's entry of his plea of guilty on

9  that December the 1st day seems to me, having reviewed the

10  record and made the record at the time, belie everything that

11  the defendant alleges as a basis for being able to withdraw

12  the plea of guilty.  Even those matters that might relate to

13  deportation as Ms. Lang indicated, there was discussion at a

14  prior hearing which has to be taken as part of this, too,

15  because it is the consistent record in the case on the issue

16  of deportation and the need for the defendant to consult with

17  an immigration attorney to resolve those issues.

18    You know, at the time of the entry of the plea of

19  guilty and at times of other matters appearing before me in

20  this case, the defendant clearly understood what was being --

21  what was transpiring at the time that he entered his plea of

22  guilty.  He took an oath, and under the circumstances, I took

23  some additional time to ensure that he understood what was

24  going on in relation to the plea of guilty and that he was

25  pleading guilty to a misdemeanor with a recommendation I

1  believe of time served.  Right, Ms. Lang?

2          MS. LANG:  That is correct, Your Honor, yes.

3          THE COURT:  Right, Mr. Ahmed?

4          MR. AHMED:  Yes, Your Honor.

5          THE COURT:  As opposed to the felony charges that

6  were on the table previously.  It's clear from the record that

7  the defendant while under oath indicated that he understood

8  those things, that it was his desire to enter a plea of

9  guilty, no one was forcing him to enter a plea of guilty, that

10  he fully understood the consequences of the plea of guilty on

11  that December the 1st day, that he understood those issues

12  relating to immigration or lack thereof, the possibility of or

13  not the possibility of, that he was doing this freely,

14  voluntarily.  He indicated that he had no complaints with his

15  attorney, that his attorney had appropriately advised him in

16  all matters relating to the entry of the plea of guilty, fully

17  answered all of his questions that he had of his attorney

18  relating to those matters that relate to the entry of the plea

19  of guilty versus a trial and the charge, the misdemeanor

20  charge.  The record is replete with instances and matters

21  under oath that entirely are contrary to the defendant's

22  statement and assertion not under oath in his motion, pro se

23  motion, now supplemented by a motion by your office as his

24  counsel.

25          Ordinarily, the statement would be made that clearly

1  this is just an example of buyer's remorse, but it's not --

2  you can't really say that's an example or experience of

3  buyer's remorse because going from a felony, if you just look

4  at that, going from a felony to a misdemeanor with time served

5  with some uncertainty as to deportation, how remorseful can

6  one be, and especially considering that he was advised by his

7  attorney and indicated that he was satisfied with that advice

8  when inquired as to whether he was satisfied with all of the

9  advice that his attorney had provided to him that he should

10  consult with an immigration attorney on the issue of

11  deportation.  Whether he did that or not, I don't know.  There

12  is nothing in his statement or his motion or in the supplement

13  that he did, but he was advised to do that, which is

14  appropriate advice under these types of circumstances where

15  there might be an issue of deportation.

16      So that being said, unless there is any further

17  argument, I am ready to rule on the motion.

18      MR. AHMED:  I would just like the Court to know

19  that -- thank you, Your Honor.  But I would like the Court to

20  understand that when Mr. Khalaf first came before the Court,

21  he was in an indigent state.  He was able to scrounge some

22  money together from his family.  They hired a private lawyer.

23  They didn't even fulfill their monetary obligations to that

24  private lawyer, the money ran out, and he is just not in a

25  position to pay an immigration lawyer for more advice.  With

1  that, Your Honor, I will conclude.

2      THE COURT:  All right.  Defendant's motion to

3  withdraw his plea of guilty in light of the arguments

4  presented by counsel here in open court and the briefs and

5  memoranda previously filed is overruled.

6      Having overruled the motion to withdraw the plea of

7  guilty, are we now ready to go forward with sentencing,

8  Mr. Ahmed?

9      MR. AHMED:  Yes, Your Honor.

10      THE COURT:  Have you had the opportunity to review

11  the presentence investigation report in this matter with your

12  client?

13      MR. AHMED:  Yes, Your Honor.

14      THE COURT:  And on that review, are there any

15  objections currently pending with respect to the report?

16      MR. AHMED:  No formal objections to the calculations

17  of the facts stated in the PSR, Your Honor.

18      THE COURT:  All right.

19      MR. AHMED:  Not on behalf of the defendant.

20      THE COURT:  All right.  Ms. Lang, on behalf of the

21  United States, have you had the opportunity to review the

22  presentence investigation report in this matter?

23      MS. LANG:  Yes, Your Honor.

24      THE COURT:  Are there any objections on behalf of the

25  United States?

1    MS. LANG:  No, Your Honor.

2    THE COURT:  There being no objections to the

3  presence investigation report, the Court will accept same

4  in its entirety and will now proceed with a review of those

5  matters relating to Local Rule 13.05(b)(ii) as it relates to

6  all pleas of guilty and sentencings in this district.

7  **(Pursuant to Local Rule 13.05, a bench conference was held on**

8  **the record and placed under seal; after which, the following**

9  **proceedings continued in open court:)**

10   THE COURT:  Having done so, the Court now concludes

11  that the total offense level applicable to the defendant is

12  18, the appropriate criminal history category is one, which

13  establishes a guideline provision range of 12 months.  There

14  is a period of supervised release available of one year as

15  well as a special assessment in favor of the United States in

16  the amount of $25.

17   Having so concluded, is there anything you would like

18  to say on behalf of your client at this time, Mr. Ahmed,

19  before the Court imposes sentence in this matter?

20   MR. AHMED:  Yes, Your Honor, very briefly.  We would

21  ask that you follow the joint recommendation of the parties

22  for a sentence of time served.  Mr. Khalaf regrets his

23  actions.  He regrets any harm that he has caused to the victim

24  in this case and to any other people unduly affected.  He

25  would like the Court to understand that he is sorry for his

conduct.  He made a terrible series of decisions, but he is

paying for them.  Not only has he sat in jail for almost a

year already, but he basically ruined his life.  He lost his

ability to pursue his Ph.D.  His academic and his criminal

record are forever scarred, forever marked with his behavior.

He has to go home to the scorn and the anger of his family who

he has let down financially and emotionally.  He has rendered

himself deportable in my understanding, so he has really,

really caused his own tragic fall.  And I would like the Court

to understand that, you know, from our perspective, the year

he has spent in prison is more than sufficient to impress upon

him never to engage in this type of behavior again.  Thank

you.

THE COURT:  Thank you.  Anything on behalf of the

United States, Ms. Lang?

MS. LANG:  Yes, Your Honor.  The victim is present

and she would like to make a statement.

THE COURT:  All right.  Step up, ma'am.  Would you

state your name for the record please?

MS. MAXWELL:  Yeah, my name is Emily Maxwell.

THE COURT:  Go right ahead.

MS. MAXWELL:  Thank you.  I apologize, I am going to

be reading a lot, so I won't be able to look at you as much.

To begin, I would like to thank the Court for giving me the

opportunity to share my side of this story.  At this point, we

1   are all fully aware of all the facts that have been presented,

2   so there is really no need for me to go over anything that has

3   already been documented.  What is missing from court

4   documents, however, is the overall effect that this entire

5   experience has had on me for over two years.  Fortunately,

6   despite the trauma Hussein has caused me, I graduated and have

7   started a new position in a career that fulfills me.  However,

8   I am losing yet another day of my life because of Hussein and

9   his behavior for the past few years just so I can share the

10  impact of this case that it has had on me.  At this very

11  moment, he still continues to steal pieces of joy from me.

12  I'm still living through the embarrassment of telling my story

13  over and over, and I really hope that this will be the last

14  time.

15          Hussein, despite his many accomplishments, is for

16  lack of a better word a monster.  He destroyed me in ways that

17  others often cannot comprehend.  I no longer feel as though I

18  am a whole person, and I don't know who I am anymore.  I lack

19  the ability to eat, sleep, or think properly because of the

20  turmoil I've been subjected to since the beginning of this

21  case.  I am now clinically diagnosed with PTSD and have been

22  prescribed medication to help me deal with the constant

23  onslaught of nightmares and the terror of coping with

24  day-to-day tasks.  I have lost friends, relationships, and the

25  ability to feel contentment, happiness, or even peace because

1    of the paranoia and trust issues as a result of his actions.

2    Each day is a waking nightmare.

3          The effects of hearing how he wished he could rape

4    and abuse me with pictures included haunt me to this day.

5    While it's painful to talk about, the discomfort you might

6    feel by hearing this is nothing compared to what I picture

7    every night as I fall asleep and every thought that crosses my

8    mind when I leave my house.  I fear for my family, I fear for

9    my youngest sibling, I fear for my future, and I fear for my

10   life.

11         Hussein has mentioned many times that he doesn't feel

12   it's right for him to lose the opportunity given to him by

13   coming to the United States.  He has spoken of his fear of

14   being in Iraq and the threat to his own life and safety.  What

15   a deep ocean of irony in which he swims.

16         Before I started at St. Louis University, I was

17   homeless.  I had nothing.  I dreamed of what could have been,

18   and since I was a little girl, I hoped that I could live up to

19   the expectations of the family I was raised by.  I did that,

20   but I struggled and suffered more than I needed to and did not

21   get to achieve the dream that I wanted in the way that I

22   wanted.  I was told I needed to relocate to housing elsewhere

23   besides my own per credible threats made to my own life early

24   in the spring semester of 2022.  I relocated often even before

25   then and spent more time away from my own home since the

1   beginning of the case than I did in it.

2        I suffered in silence as I took courses and struggled

3   to succeed as I always imagined I would.  It was very

4   difficult to focus on my work knowing that the number of peers

5   he sent sensitive images of me to was so large.  It was hard

6   to even look these people in the face on campus knowing that

7   they had seen what they had seen and had been harassed by

8   Hussein himself because of me.  What was I supposed to say to

9   them when they asked me why an account with my name was

10   sending them graphic texts and sexually explicit images.  How

11   was I supposed to explain to my advisor why he shouldn't open

12   any messages from an account with my name on social media.

13   How do you, Your Honor, think I felt when I had to explain to

14   everyone I was close to that they needed to know where every

15   door and exit was when they entered a new place, to always

16   have their back to a wall, to check under their car every time

17   they go outside, and make sure they carry their keys between

18   their fingers, to always let someone know where they are

19   going, to trust no one.

20        As a result of the thousands of horrific texts and

21   phone calls at all hours of the day including during classes

22   combined with the humiliation, sleep deprivation, and

23   isolation, I was forced to take incomplete grades.  Though

24   many were understanding and helpful at the university, I

25   didn't officially graduate until October 15, 2022 even though

1  I was allowed to walk across the stage at commencement with my

2  peers.  The day I walked that stage last spring should have

3  been the happiest day of my life.  I sacrificed everything to

4  be there.  He took that away from me.  The audacity he has to

5  hope to inspire pity and sympathy about his own dream being

6  taken away from him was a constant thought as I reluctantly

7  took the diploma I hadn't even fully earned yet because of

8  him.  I have had no financial support from family or friends.

9  I am one hundred percent self-made, and if there is an

10  American dream, that's what I have tried to attain and I am on

11  my way to doing so.  Hussein has done everything in his power

12  to rob me of this dream.

13       In short, Hussein is the worst type of human being

14  imaginable.  The effects of his torment on me for these past

15  years will ripple throughout the rest of my life, even in ways

16  I cannot perceive at present.  I fear the idea of even having

17  children because of the damage he has done to me.  They don't

18  deserve to suffer because of him.  I am no longer sure I know

19  what happiness is.  I take my happiness in small doses and

20  hold on to small joyful moments whenever I can because I know

21  that it's essentially impossible to ever fully recover from

22  what he has done no matters how many doctors or therapists I

23  see.  I will never feel safe as long as he's allowed to walk

24  free anywhere near me.  I greatly look forward to the day

25  where Hussein is no longer in the United States and I can

1    thrive in my home country as I always hoped to.

2        Your Honor, if you can take anything from what I have

3    said, know that Hussein Khalaf has changed my life for the

4    worse, and I hope and pray that he doesn't have the chance to

5    do what he did to me to any other person.  I am not stronger

6    because of Hussein; I am stronger in spite of him.  Thank you.

7        THE COURT:  Thank you so very much.  Anything else on

8    behalf of the United States?

9        MS. LANG:  No, Your Honor.

10       THE COURT:  Anything else on behalf of the defendant,

11   Mr. Ahmed?

12       MR. AHMED:  No, Your Honor.

13       THE COURT:  Is there anything you want to say in your

14   own behalf, Mr. Khalaf?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Go right ahead.

17       THE DEFENDANT:  So, Your Honor, I was listening to

18   Emily and probably if anything probably what happened through

19   this case that caused damage or something to her, I did not do

20   any of that damage, and I explained myself many times, and the

21   person who was sending those messages, she knows him.

22       MR. AHMED:  Your Honor, may I have a moment?

23       THE COURT:  Sure.

24       **(Attorney consults with Defendant)**

25       THE DEFENDANT:  Yeah.  So again, I did not cause any

1  of those damages, and I am not that monster person or like the

2  worst human being that was mentioned in the letter.  And to

3  say the thing what she said like she is self-made American

4  dream, I don't want to mention what kind of job she works.

5  She knows that.  We dated and she knows that I know and --

6  please let me just finish this.  She started this job in Japan

7  in 2015 and continued through the year.  I am not saying it's

8  bad.  I mean, it's a free country and you can probably work

9  whatever.  She did that also even with her advisers from

10  school from SLU, from Truman University.  I am not judging any

11  person, but also that's not a clear example of American dream,

12  that you can sell your body for --

13         MR. AHMED:  All right.  Your Honor, may I have a

14  minute?

15         THE COURT:  Yes.

16         **(Attorney consults with Defendant)**

17         MR. AHMED:  Thank you.

18         THE DEFENDANT:  So yeah, probably my attorney thinks

19  this is not in my best interest.  But, I mean, I don't want

20  just to keep repeating myself.  If anything happened to any

21  person, probably I hurt in direct or indirect way I apologize

22  for that.  But me personally, God knows.  That's the comfort

23  that I have, God knows.  Probably here we deal with evidence

24  with people talking and that's a human thing, but God knows

25  who is Hussein.  And again, if I hurt anyone in an indirect

1  way, I apologize for that.  But I am not that monster person,

2  and I learned a lot from this experience.  It's a very bad

3  experience to me as my attorney said and it just damaged

4  everything, but this is life and I have to deal with it.  And

5  again, thank you, Your Honor, for letting me just say those

6  few words, and again, if I hurt anyone in an indirect way, I

7  apologize.  Thank you.

8  THE COURT:  Thank you.  Any legal cause why sentence

9  should not now be imposed, Mr. Ahmed?

10  MR. AHMED:  No, Your Honor.

11  THE COURT:  Ms. Lang?

12  MS. LANG:  No, Your Honor.

13  THE COURT:  No legal cause having been shown as to

14  why sentence should not now be imposed, allocution having been

15  granted, it is now the order and judgment of the Court

16  pursuant to the Sentencing Reform Act of 1984 as well as the

17  provisions of 18 USC Section 3553(a) that the defendant be

18  committed to the custody of the Bureau of Prisons for a term

19  of time served.

20  Upon release from imprisonment, defendant will be

21  placed on supervised release for a term of one year.  The

22  mandatory conditions of supervision will attach as well as

23  this Court's standard conditions of supervision.  Certain

24  special conditions will also be applicable, and if it is

25  determined that there are costs associated with any services

1  provided, the defendant will pay those costs based on a

2  co-payment fee established by the Probation Office.

3        The defendant must not communicate or otherwise

4  interact with the victim, either directly or through someone

5  else, without first obtaining the permission of the probation

6  officer.  Defendant must pay the costs of any future

7  counseling for the victim of this offense should counseling be

8  pursued.

9        Defendant must immediately report, continue to

10 report, or surrender to the U.S. Immigration and Customs

11 Enforcement and follow all of their instructions and reporting

12 requirements until any deportation proceedings are completed.

13 If the defendant is ordered deported from the United States,

14 the defendant must remain outside the United States unless

15 legally authorized to reenter.  If the defendant reenters the

16 United States, then the defendant must report to the nearest

17 Probation Office within 72 hours after his return.

18        Defendant must participate in a mental health

19 treatment program and follow the rules and regulations of that

20 program.  The probation officer in consultation with the

21 treatment provider will supervise defendant's participation in

22 the program.

23        Defendant must submit his person, property, house,

24 residence, vehicle, papers, computers, other electronic

25 communications or data storage devices or media or office to a

1    search conducted by a United States probation officer.

2    Defendant must warn any other occupants that the premises may

3    be subject to searches pursuant to this condition.  The

4    probation officer may conduct a search under this condition

5    only when reasonable suspicion exists that the defendant has

6    violated a condition of supervision and that the areas to be

7    searched contain evidence of the violation.

8         No fine will be imposed, and lastly it is ordered

9    that the defendant pay to the United States a special

10    assessment of $25 which will be due immediately.

11         Anything further on behalf of the defendant at this

12    time, Mr. Ahmed?

13         MR. AHMED:  Your Honor, I never had this situation

14    before, so I don't know if I need a formal order from you to

15    have his location monitoring bracelet taken off.

16         MS. LANG:  The Government would object to that, and

17    the victim actually asked me to advocate that he keep the

18    monitor on, location monitoring on, while he is under the

19    supervision of probation and parole.

20         THE COURT:  Yeah, I think that that's something that

21    we can address later on after he reports to his probation and

22    parole officer relative his period of supervised release.  We

23    can revisit it at some point after that, okay?

24         MR. AHMED:  Okay.  Thank you.

25         THE COURT:  Anything else?

1          MR. AHMED:  No, Your Honor.

2          THE COURT:  Anything further on behalf of the United

3     States?

4          MS. LANG:  No, Your Honor.  Thank you.

5          THE COURT:  All right.  Appeal.  Well, it is a

6     misdemeanor, but I am going to talk about it anyway just to

7     cover the record.  Well, maybe not.  Well, I'm going to do it

8     anyway just to be on the safe side.  Mr. Khalaf, you could

9     have appealed the sentence and judgment in this case, but you

10    would have to do it within 14 days of the date of the sentence

11    and judgment, so that would be 14 days from today's date.  If

12    you do not file the notice of appeal before the 14 days

13    expired, then you would have given up your right to appeal the

14    sentence and judgment in this case.  If you could not afford

15    to pay the costs of filing the notice of appeal, you could

16    request that the costs be waived, and if the costs were

17    waived, then the Clerk of the Court would file the notice of

18    appeal free of charge in your behalf.

19         You could have appealed it where you felt or believed

20    that it violated the law in some fashion or was otherwise

21    contrary to the law or if it was void or voidable on its face.

22    Maybe you have the right to file a petition for a writ of

23    habeas corpus, although you are not confined at this time

24    since your sentence has been time served, and if you had the

25    right to file a petition for writ of habeas corpus, it would

1  be limited to two things, ineffective assistance of counsel

2  and prosecutorial misconduct, although I do not believe you

3  have that ability.

4      Madam probation officer, did you want to speak with

5  me?

6      PROBATION OFFICER:  Yes.

7      **(A Bench Conference Was Held Off the Record)**

8      THE COURT:  Subject to reporting to Pretrial

9  Services, that will conclude this proceeding.  You might want

10 to go down there on the way out.

11     MR. AHMED:  I'm sorry, Your Honor, stop in on

12 Pretrial is what you are telling me?

13     THE COURT:  Yeah.

14     MR. AHMED:  Thank you.

15     THE COURT:  Okay.  Anything else, Ms. Lang?

16     MS. LANG:  No, Your Honor.

17     THE COURT:  All right.  Thank you, all.  That will

18 conclude this proceeding.

19     MR. AHMED:  Thank you, Your Honor.

20         **(PROCEEDINGS CONCLUDED AT 2:05 P.M.)**

21

22

23

24

25

1                         CERTIFICATE

2

3         I, Angela K. Daley, Registered Merit Reporter and

4     Certified Realtime Reporter, hereby certify that I am a duly

5     appointed Official Court Reporter of the United States

6     District Court for the Eastern District of Missouri.

7         I further certify that the foregoing is a true and

8     accurate transcript of the proceedings held in the

9     above-entitled case and that said transcript is a true and

10    correct transcription of my stenographic notes.

11        I further certify that this transcript contains

12    pages 1 through 22 inclusive and that this reporter takes no

13    responsibility for missing or damaged pages of this transcript

14    when same transcript is copied by any party other than this

15    reporter.

16        Dated at St. Louis, Missouri, this 30th day of May, 2023.

17

18

19        _____
              /S/Angela K. Daley
20            Angela K. Daley, CSR, RMR, FCRR, CRR
              Official Court Reporter
21

22

23

24

25